IN THE ~~CIRCUIT~~UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ~~COOK COUNTY,~~ ILLINOIS ~~COUNTY DEPARTMENT – CHANCERY~~EASTERN DIVISION

| | |
|---|---|
| LANCE SAKOWSKI, individually, and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>TRANS UNION, LLC; NEWREZ LLC, d/b/a Shellpoint Mortgage Servicing; LEXISNEXIS RISK SOLUTIONS, INC.,<br><br>*Defendants*. | Case No: 1:25-cv-11283<br><br>~~CLASS ACTION COMPLAINT~~<br><br>~~JURY TRIAL DEMANDED~~Hon. Mary M. Rowland<br>United States District Judge<br><br>Hon. Jeffrey T. Gilbert<br>United States Magistrate Judge |

**AMENDED CLASS ACTION COMPLAINT**

Plaintiff Lance Sakowski (hereinafter "Plaintiff") alleges:

### I. PRELIMINARY STATEMENT

1. This is a class action for damages arising from Defendants' violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, in connection with their inaccurate credit reporting, failure to properly investigate consumer disputes, and their reporting practices as consumer reporting agencies and furnishers of credit information.

### II. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 15 U.S.C. § 1681p.

3. This Court has jurisdiction over ~~Defendants in~~ the subject matter of this action pursuant to ~~735 ILCS 5/2-209~~FCRA section 1681p and ~~the Illinois Constitution because at least one Defendant, namely Trans Union, LLC, maintains its principal place of business in Cook County, Illinois~~28 U.S.C. § 1331.

4. Venue is proper in ~~Cook County~~this Court pursuant to ~~735 ILCS 5/2-101~~28 U.S.C. § 1391(b) because at least one Defendant, namely Trans Union, LLC, resides ~~in this county and substantial acts giving rise to the claims occurred and are continuing to occur~~ within this ~~jurisdiction~~District.

### III.    PARTIES

5. Plaintiff is a natural person who, at all relevant times, has resided in Toms River, New Jersey.

6. Defendant Trans Union, LLC ("TransUnion") is a business entity with its business headquarters located at 555 West Adams, Chicago, Illinois 60661. TransUnion is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f) and engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681 a(d), to third parties.

7. Defendant Newrez LLC doing business as Shellpoint Mortgage Servicing, ("Shellpoint"), is a business entity that offers mortgage lending, refinancing, calculations, foreclosure, and other financial services. Shellpoint regularly conducts business within Illinois and has a registered agent in Illinois, namely Illinois Corporation Service Company at 801 Adlai Stevenson Drive, Springfield, Illinois 62703-4261. Shellpoint regularly and in the ordinary course of business furnishes information to various consumer reporting agencies regarding Shellpoint's transactions with consumers and is therefore a "furnisher" of information as contemplated by the FCRA. 15 U.S.C. §§ 1681s-2(a) & (b).

8. Defendant LexisNexis Risk Solutions, Inc. ("LexisNexis") is a business entity that regularly conducts business in Illinois and has a registered agent in Illinois, namely CT Corporation System at 208 S. LaSalle St., Ste. 814, Chicago, Illinois 60604-1101. LexisNexis is a

2

"consumer reporting agency" as defined in 15 U.S.C. § 1681a(f) and also acts as a "reseller of information," as defined in 15 U.S.C. § 1681a(u), because it is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681 a(d), to third parties.

## IV. FACTUAL STATEMENT

9. On or about November 2018, Plaintiff's mortgage began to be serviced by Shellpoint. Consistent with his mortgage obligations, Plaintiff made payments on his mortgage.

10. On or about April 2020, Plaintiff entered into a COVID forbearance agreement.

11. The agreement was set to terminate on September 30, 2021. Nearing the end of the agreement, Plaintiff advised Defendant about difficulty making payments. As a result of those discussions, in November 2021, Plaintiff entered into a loan modification.

12. The modification required Plaintiff to pay a lesser amount for three months (a trial period), November 2021, December 2021, and January 2022 before the modification would become permanent.

13. In accordance with said modification, Plaintiff paid his loan each month on time throughout the trial period and therefore could not have been delinquent.

14. Despite Plaintiff keeping up his end of the bargain, Shellpoint began credit reporting Plaintiff as late during the three-month period as 30, 60, and 90 days late.

15. This information was false, inaccurate, and misleading because it communicated that Plaintiff had not made *any* mortgage payments during the months of November 2021, December 2021, and January 2022 when Plaintiff had, in fact, made his mortgage payments on time during those months consistent with the trial period and/or mortgage modification.

3

15.16. In late 2023 and continuing into 2024, while applying for credit and being turned down, Plaintiff noticed the credit reporting error and began disputing the information.

16.17. Plaintiff disputed the information directly with Shellpoint, but Shellpoint continued reporting the error.

17.18. Thereafter, Plaintiff disputed the information with TransUnion advising TransUnion of the trial period and/or modification and the erroneous reporting.

18. Upon information and belief, TransUnion forwarded Plaintiff's dispute to Shellpoint.

19. Upon information, and beliefin response, Shellpoint advised TransUnion that Plaintiff was in a partial payment plan between November 2021 and January 2022, which Plaintiff was paying on, as agreed. Despite its receipt of this information from Shellpoint, TransUnion, pursuant to its standard policies and practices, disregarded it continued reporting Plaintiff as delinquent during the months between November 2021 and January 2022, with no indication whatsoever that Plaintiff had been paying as agreed under a trial period and/or modified plan.

20. Upon information and beliefIn the alternative, upon receipt of Plaintiff's dispute, TransUnion disregarded the information provided by forwarded Plaintiff's dispute to Shellpoint, and but failed pursuant to its standard polices and practices to provide a means for Shellpoint to advise it that Plaintiff was in a partial payment plan between November 2021 and January 2022, which Plaintiff was paying on, as agreed. As a result of this unreasonable procedural omission, TransUnion continued reporting Plaintiff as delinquent during the months ofbetween November 2021 and January 2022, with no further indication whatsoever that Plaintiff had been paying as agreed under a trial period and/or modified plan.

4

21. TransUnion wholly failed to produce this complete reporting, after each of Plaintiff's subsequent disputes in late 2023 and 2024.

22. Alternatively, TransUnion provided no mechanism for Shellpoint to report this data, preventing maximum possible accuracy within its credit reports.

23.22. In *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800 (7th Cir. 2023), the Seventh Circuit Court of Appeals addressed an identical fact pattern concerning a trial period and provided specific industry guidance for how such information must be credit reported. The Circuit held that the failure to disclose the existence of a trial period, within the credit report, created an inaccuracy that is actionable within the bounds of the Fair Credit Reporting Act.

24.23. With strong guidance from a Circuit Court, the credit industry promptly took notice and changed their policies to ensure accurate credit reporting.

25.24. For instance, in Mr. Sakowski's case, Experian properly reported complete and accurate information concerning the trial period, consistent with the law:



26.25. TransUnion's reporting, however, was simply incomplete, misleading, and inaccurate because it omitted any reference to Plaintiff's involvement in a trial period and/or mortgage modification during the months of November 2021, December 2021, and January 2022

5

and thereby communicated *at all relevant times thereafter*, that Plaintiff's alleged failure to make any mortgage payments during those months was without justification.

26. Despite the Seventh Circuit's clear guidance in *Chaitoff* that the omission of the existence of a trial period, within the credit report, created an inaccuracy that is actionable under the FCRA, TransUnion's subsequent failure to do so was unreasonable and in reckless disregard of its FCRA duties. *See Safeco Ins. Co., of Am. v. Burr*, 551 U.S. 47, 70 (2007).

27. This omission injured Plaintiff as "it requires little imagination to see how the omission of a TPP might affect a consumer's creditworthiness." *Chaitoff*, 79 F.4th at 812.

27. 28. In the alternative to the allegations in paragraphs 18 and 19, above, in response to the dispute received from TransUnion concerning the erroneous lates during November 2021 through January 2022, Shellpoint failed to provide TransUnion with information ~~informing TransUnion~~advising it that during the months of November 2021 and January 2022, Plaintiff was making timely payments consistent with a partial payment plan.

28. 29. Said reporting was incomplete, and therefore inaccurate.

29. 30. Shellpoint's reporting also failed to abide by Circuit guidance for another reason. It is well established in the credit industry that the failure to report an account as disputed when known to be disputed is inaccurate and incomplete. *Gorman v. Wolpoff & Abramson*, LLP, 584 F.3d 1147, 1162 (9th Cir. 2009) ("a furnisher's decision to continue reporting a disputed debt without any notation of the dispute presents a cognizable claim under § 1681s-2(b)"); *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 150 (4th Cir. 2008).

30. 31. Here, Shellpoint knew Plaintiff disputed its reporting but nonetheless failed to report that disputed status information to TransUnion.

32. On or about December 3, 2024, LexisNexis prepared a consumer report about Plaintiff for Capital One in connection with Plaintiff's application for credit that contained false, inaccurate, and misleading information about Plaintiff's Shellpoint mortgage account, specifically that Plaintiff had failed to make his required mortgage payments and was delinquent in the months of November 2021, December 2021, and January 2022 and separately, omitting any reference to the trial period in effect during those months.

33. Capital One denied Plaintiff's application for credit. The false, inaccurate, and misleading information about Plaintiff's Shellpoint mortgage account that LexisNexis included in its report was a substantial factor in Capital One's decision to deny Plaintiff's application for credit.

~~31.~~34. Thereafter, on or about January 2024, Plaintiff submitted an additional dispute to LexisNexis~~,~~ concerning the erroneous reporting of his mortgage payment history.

~~32.~~35. Upon information and belief, after receiving Plaintiff's dispute, LexisNexis forwarded Plaintiff's dispute to TransUnion. Thereafter, TransUnion failed to respond to LexisNexis's dispute, and failed to conduct an investigation. Under such circumstances, LexisNexis's failure to remove the disputed information from Plaintiff's credit file was unreasonable and in dereliction of its duties to Plaintiff under the FCRA.

36. In the alternative, LexisNexis failed to transmit Plaintiff's dispute to TransUnion, which was unreasonable and in dereliction of its duties to Plaintiff under the FCRA.

37. After it received Plaintiff's disputes, LexisNexis was on notice of the inaccuracy of the information about Plaintiff's mortgage account that it had previously included in one or more consumer reports it prepared about him.

~~33.~~38. Having failed to reinvestigate Plaintiff's dispute of the information about Plaintiff's mortgage account or delete that information from his file after receiving no response from

TransUnion, LexisNexis had no reasonable basis to believe that the information was accurate and should not have included it in any consumer report it subsequently prepared about Plaintiff.

34.39.  Nonetheless, as of December 2024, LexisNexis knew of the incomplete information being reported concerning the lates during the November 2021-January 2022 timeframe, but continued reporting them despite having never received confirmation of their accuracy from any source of information.

35.40.  During the course of attempting to correct these errors, Plaintiff has spent a significant amount of time trying to get a hold of the right documents and disputing the information at issue with LexisNexis, Shellpoint, and TransUnion.

36.41.  Removing this information was critical to Plaintiff because it prevented him from refinancing his home and caused a decrease in his credit line with at least one of his credit cards, a Wells Fargo account.

### V.    CLASS ACTION ALLEGATIONS

37.42.  Plaintiff brings this as a class action on behalf of himself and all others similarly situated who were subject to similar FCRA violations.

38.43.  Plaintiff seeks certification of the following classes, initially defined as follows:

*Shellpoint PPP/TPP Class*

All natural persons residing in the United States who entered into a partial payment plan and/or trial period plan concerning their Shellpoint account and, within two years preceding the filing of this Complaintmatter until the date of the Court's class certification order, who submitted a dispute regarding that account to a consumer reporting agency, for TransUnion, in its response to which dispute Shellpoint failed to accurately report the existence of the partial payment plan to the consumer reporting agency in response to the disputeand/or trial period plan to TransUnion .

*Shellpoint Dispute Class*

All natural persons residing in the United States who, within two years preceding the filing of this Complaintmatter until the date of the Court's class certification order, submitted a dispute regarding a Shellpoint account to a consumer reporting

8

agency TransUnion, for whom Shellpoint knew the consumer disputed the information, and for whom Shellpoint failed to accurately report the existence of a dispute to ~~the consumer reporting agency~~TransUnion in response to the dispute.

*TransUnion Incomplete Reporting Class*

All natural persons residing in the United States who~~, within five years preceding the filing of this Complaint until the date of the Court's class certification order,~~ entered into a partial payment plan and/or trial period plan with a creditor and for whom TransUnion, LLC failed to report the existence of that partial payment plan and/or trial period plan in one or more consumer reports it prepared about the person and published to a third party within the period beginning five years preceding the filing of this matter and continuing until the date of the Court's class certification order.

*TransUnion Failure to Reinvestigate Incomplete Reporting Class*

All natural persons residing in the United States who~~, within two years preceding the filing of this Complaint until the date of the Court's class certification order,~~ entered into a partial payment plan and/or trial period plan with a creditor, submitted a dispute regarding the related tradeline directly to TransUnion, and for whom TransUnion failed to update the tradeline to reflect the partial payment plan and/or trial period plan in one or more consumer reports it subsequently prepared about the person and published to a third party within the period beginning two years preceding the filing of this matter and continuing until the date of the Court's class certification order.

*TransUnion Failure to Reinvestigate Reseller Dispute Class*

All natural persons residing in the United States ~~who~~concerning whom, within two years preceding the filing of this ~~Complaint~~matter until the date of the Court's class certification order, ~~submitted~~ TransUnion received notice of a dispute ~~to~~from a credit reporting reseller ~~concerning~~of tradeline data originally furnished by TransUnion, ~~where the reseller transmitted the~~with respect to which dispute ~~to TransUnion, and~~ TransUnion failed to respond ~~to~~ and/or failed to conduct a reasonable reinvestigation ~~of the dispute~~.

*LexisNexis Class*

All natural persons residing in the United States who, within two years preceding the filing of this ~~Complaint~~matter until the date of the Court's class certification order, ~~submitted a dispute to~~concerning whom LexisNexis has a record of receiving a dispute regarding tradeline data originally furnished by TransUnion, ~~and~~ with respect to ~~whose~~which dispute(s) LexisNexis failed to forward notice thereof to TransUnion and/or failed to provide a complete reinvestigation response to the consumer.

9

39.44. Excluded from the Classes are Defendants and any person, firm, trust, corporation, or other entity related to or affiliated with Defendants, including, without limitation, persons who are officers, directors, employees, associates, or partners of Defendants.

40.45. Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify one or more classes only as to particular issues, or modify the class definition as to the geographical location or original creditor or otherwise.

41.46. **Numerosity.** Upon information and belief, Defendants have engaged in numerous systematic FCRA violations for hundreds if not thousands of consumers throughout the United States. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable. The exact number and identities of the members of the Classes are unknown at this time and can only be ascertained through discovery. The identifies of members of the Classes can be determined pursuit to a ministerial review of Defendants' records.

42.47. **Commonality, and Predominance.** There are questions of law and fact common to the Classes that predominate over any questions affecting only individual members of the Classes. These common questions of law and fact include, without limitation: (i) whether Defendants violated the provisions of the FCRA; (ii) whether the Plaintiff and members of the Classes have been injured by Defendants' conduct; and (iii) whether the Plaintiff and members of the Classes have sustained damages and are entitled to restitution as a result of Defendants' wrongdoing and, if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution.

48. **Typicality.** Plaintiff's claims are typical of the claims of the Classes, which all arise from the same operative facts and are based on the same legal theory: certain Defendants' failure

to report complete and accurate information about Plaintiff and his mortgage and certain Defendants' failure to reinvestigate or delete incomplete and/or inaccurate information upon receipt of notice of a dispute thereof as required by 15 U.S.C. § 1681i(a)(1) and (2).

43.49. **Adequacy.** Plaintiff will fairly and adequately represent Class members' interests. Plaintiff has retained counsel that is experienced in prosecuting complex class action matters, including class actions under the FCRA and, further, Plaintiff anticipates no impediments in the pursuit and maintenance of the class action as sought herein. Neither the Plaintiff nor his counsel have any interests that might cause them not to vigorously pursue the instant class action lawsuit.

44.50. **Appropriateness.Superiority.** A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted because (i) the members of the Classes are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action; (ii) prosecution of separate actions by individual members of the Classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties; (iii) certification of a class is also appropriate in that the questions of law and fact common to members of the Plaintiff's Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy; (iv) a class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender; and (viv) class treatment also will permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

11

45.51. Absent a class action, the members of the Classes will continue to suffer losses borne from the Defendant's violations of their FCRA rights as well as monetary damages, thus allowing and enabling (a) Defendants' conduct to proceed and (b) Defendants to further enjoy the benefit of their ill-gotten gains.

## VI.     CLAIMS FOR RELIEF

**COUNT ONE**
On Behalf of Plaintiff and the TransUnion Classes for
Defendant TransUnion's Violations of the Fair Credit Reporting Act

46.52. Plaintiff repeats, re-alleges, and re-asserts the allegations contained in the above paragraphs and incorporates them as if specifically set forth at length herein.

47.53. Defendant TransUnion prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced consumer reports regarding Plaintiff as that term is used and defined under 15 U.S.C. § 1681a. Said reports contained the erroneous and incomplete information indicating Plaintiff was delinquent during November 2021 through January 2022.

48.54. Said reports contained information about Plaintiff that is false, misleading, and inaccurate.

49.55. TransUnion negligently and willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to Plaintiff, in violation of 15 U.S.C. § 1681e(b).

50.56. TransUnion negligently and willfully failed to conduct a reasonable investigation in response to Plaintiff's dispute in violation of 15 U.S.C. § 1681i.

51.57. TransUnion further negligently and willfully failed to conduct a reasonable investigation in response to the disputes received from LexisNexis in violation of 15 U.S.C. § 1681i.

~~52.~~58. As a direct and proximate cause of TransUnion's failure to perform its duties under the FCRA, Plaintiff has suffered actual damages, mental anguish, humiliation, and embarrassment.

~~53.~~59. TransUnion's conduct, action, and inaction was reckless and/or willful, rendering it liable for actual damages, statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, TransUnion was negligent, entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## COUNT TWO
On Behalf of Plaintiff and the Shellpoint Classes for
Defendant Shellpoint's Violations of the Fair Credit Reporting Act

~~54.~~60. Plaintiff repeats, re-alleges, and re-asserts the allegations contained in the above paragraphs and incorporates them as if specifically set forth at length herein.

~~55.~~61. At all times pertinent hereto, Shellpoint was a "person" as that term is used and defined under 15 U.S.C. § 1681a.

~~56.~~62. Shellpoint furnished information concerning Plaintiff's account to TransUnion.

~~57.~~63. Shellpoint received disputes from Plaintiff through TransUnion concerning the incomplete reporting during the months of November 2021 through January 2022.

~~58.~~64. Shellpoint willfully and negligently failed to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2(b).

~~59.~~65. After receipt of TransUnion's disputes, Shellpoint failed to provide complete information to TransUnion.

~~60.~~66. Shellpoint willfully and negligently failed to conduct a reasonable investigation into the tradeline in dispute.

~~61.~~67. As a direct and proximate cause of Shellpoint's failure to perform its duties under the FCRA, Plaintiff has suffered actual damages, mental anguish, humiliation, and embarrassment.

<del>62.</del><ins>68.</ins> Shellpoint's conduct, action, and inaction was reckless and/or willful, rendering it liable for actual damages, statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Shellpoint was negligent, entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## COUNT THREE
On Behalf of Plaintiff and the LexisNexis Class for
Defendant LexisNexis's Violations of the Fair Credit Reporting Act

<del>63.</del><ins>69.</ins> Plaintiff repeats, re-alleges, and re-asserts the allegations contained in the above paragraphs and incorporates them as if specifically set forth at length herein.

<del>64.</del><ins>70.</ins> LexisNexis prepared, compiled, issued, assembled, transferred, published and otherwise reproduced consumer reports regarding Plaintiff as that term is used and defined under 15 U.S.C. § 1681a.

<del>65.</del><ins>71.</ins> LexisNexis negligently and willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to Plaintiff, in violation of 15 U.S.C. § 1681e(b). Specifically, by reporting incomplete credit information concerning Plaintiff after being placed on notice of the incompleteness of the information, LexisNexis failed to assure maximum possible accuracy.

<del>66.</del><ins>72.</ins> LexisNexis also failed to conduct its investigative duties in violation of 15 U.S.C. § 1681i(f).

<del>67.</del><ins>73.</ins> As a direct and proximate cause of LexisNexis's failure to perform its duties under the FCRA, Plaintiff has suffered actual damages, mental anguish, humiliation, and embarrassment.

<del>68.</del><ins>74.</ins> LexisNexis's conduct, action, and inaction was reckless and/or willful, rendering it liable for actual and statutory damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, LexisNexis was negligent, entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## VII. JURY TRIAL DEMAND

~~69.~~75.  Plaintiff demands trial by jury on all issues so triable.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lance Sakowski, respectfully requests that this Court do the following for the benefit of Plaintiff:

A. Certifying the proposed classes against Defendants;

B. Appointing Plaintiff and as Lead Plaintiff;

C. Appointing Plaintiff's Counsel as Class Counsel;

D. awarding actual damages;

E. awarding statutory damages;

F. awarding punitive and exemplary damages.

G. awarding reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n and/or 1681o; and

H. awarding such other and further relief as may be necessary, just, and proper.

Dated: ~~August 11~~November 7, 2025        ~~Respectfully submitted,~~LANCE SAKOWSKI, Plaintiff

                                        ~~FRANCIS MAILMAN SOUMILAS, P.C.~~
                                        ~~Firm No. 100495~~

By:   *Jordan M. Sartell*
      Jordan M. Sartell ~~(ARDC No. 6310097)~~
      FRANCIS MAILMAN SOUMILAS, P.C.
      310 S. County Farm Rd., Ste. H
      Wheaton, IL 60187
      (215) 735-8600
      jsartell@consumerlawfirm.com

<div style="margin-left:50%">

*Attorney*John Soumilas (*pro hac vice* forthcoming)
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market St., Suite 2510
Philadelphia, PA 19103
(215) 735-8600
jsoumilas@consumerlawfirm.com

Daniel Zemel
ZEMEL LAW, LLC
660 Broadway
Paterson, NJ 07514
T: (862) 227-3106
F: (973) 282-8603
DZ@zemellawllc.com

*Attorneys for Plaintiff Lance Sakowski and the Proposed Classes*

</div>